IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03788-MEH

ALISON D. JONES,

    Plaintiff,

v.

BROOKDALE EMPLOYEE SERVICES LLC and
ALL TEAM STAFFING,

    Defendants.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is the Motion to Dismiss by Defendant Brookdale Employee Services LLC ("Brookdale"). ECF 42. It is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. Based on the record herein and for the reasons that follow, the Motion is denied in part and granted in part.

## BACKGROUND

### I.    Claims for Relief

Plaintiff sues Brookdale for allegedly violating a wide range of employment laws. She brings a Title VII claim under 42 U.S.C. § 2000e-2 for race, religion, sex, and national origin discrimination. She alleges discrimination on the basis of disability (post-traumatic stress disorder) in violation of 42 U.S.C. § 12112(a) ("ADA") and on the basis of age in violation of 29 U.S.C. § 621 ("ADEA"). Lastly, she claims a violation of Colorado's Lawful Off-Duty Employment

Statute, Colo. Rev. Stat. § 24-34-402.5, and of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681b ("FCRA").

She alleges adverse treatment in the workplace because she is white, politically and socially conservative, and Christian, and because she comes from the American South. Although her grievance concerns a wide variety of personal traits, it may be summarized as reverse discrimination.

For purposes of this ruling, the Court accepts as true the factual allegations—but not any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in her First Amended Complaint ("FAC") (ECF 39). *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis). Given her *pro se* status, the Court construes her pleadings broadly, and it refers to the initial complaint (ECF 1) for additional context.

## II.     Alleged Facts

Plaintiff worked for Defendant All Team Staffing, a temporary employment agency. ECF 1 at 9. It assigned her to work at a Brookdale retirement home as a dishwasher. *Id*.

Her assignment to the retirement home began on August 28, 2019. Both her managers and the residents complimented her work. The dining room manager (Michelle) and the food and beverage director (James) promoted her to server, increased her wage, and permitted overtime. ECF 39 at 7.

At first, she enjoyed working there, but then the environment turned antagonistic. Plaintiff liked Michelle personally but felt she managed operations poorly and was reluctant to reprimand staff. *Id*. at 26–27. James quit for reasons similar to Plaintiff's present grievance. *Id*. at 27. The

new food and beverage director (Bill) was African-American, and he was generally hostile towards the white employees. *Id*.

Various employees harassed her or otherwise treated her badly, and they did so for a variety of reasons. There was a racial component. Plaintiff describes instances of overtly hostile comments and actions against her by three African-American co-workers. *Id*. at 5, 18, 23. One manager, a female Somalian, micromanaged her and was condescending towards her because she is white. *Id*. at 5, 21–22. African-American managers were dismissive of her suggestions for operational improvements. *Id*. at 5. Some employees (including whites and Hispanics) raised the subject of interracial relationships as a way to put her on the spot. *Id*. at 24-25. Residents made disparaging comments to her about Southerners that concerned race. *Id*. at 5.

She also perceived hostility because of her sex, religion, political affiliation, and age. One gay waiter made negative comments about women, and another complained about his personal experience with Christianity. *Id*. at 5, 7. Various employees, including whites, harassed her for supporting President Trump. *Id*. at 25. Younger co-workers attempted to do her job for her in a way that implied she was too old, feeble, or senile to do it herself. *Id*. at 22. Plaintiff also perceived the micromanagement she experienced as a form of age-based discrimination. *Id*.

In addition to making comments, a range of employees went out of their way to hinder her ability to do her job. Together, she describes the comments and actions as "microaggressions" meant to cause her offense. *Id*. at 24. In short, she felt that co-workers were blaming people like her for their, and society's, problems.

Despite their own observations of such and her complaints to them about it, managers did not intervene, *id*. at 18–19, but there were some instances when Plaintiff benefitted from corrective action. When she complained about one particular act of racially aggressive conduct by a kitchen

3

staff member, the head chef stopped it. *Id*. at 23. The lesbian bartender who had made comments that made Plaintiff feel uncomfortable was fired. *Id*. at 24. So was an African-American female employee who made false statements to others about the number of Plaintiff's lovers, *id*. at 23-24, although it is unknown whether those two terminations were for reasons related to Plaintiff's present grievances. Michelle assigned her to work in a different area to minimize Plaintiff's contact with one particular direct supervisor. However, Plaintiff felt that her new co-workers in that department worked inefficiently and in a way that made her job more difficult. *Id*. at 26. That resulted in an argument with one particular co-worker, for which Michelle reprimanded Plaintiff. *Id*. at 27.

Nevertheless, Plaintiff applied to Brookdale for a permanent "direct hire" position as a server. ECF 1 at 15. Plaintiff anticipated being hired despite her criminal record. ECF 39 at 28. She reports a DWAI (a drunk driving offense), a reckless endangerment charge that was added to the DWAI charge, and an indecent exposure charge (which she says a landlord wrongfully had brought against her). *Id*. at 29. She concedes that she was *charged* with those offenses, but the FAC leaves unclear what *convictions* she has.[1] Two regional managers assured her that it would not hinder her becoming a permanent employee. *Id*. at 28. It was not an issue until Bill, the newly hired food and beverage director, used it as an excuse to terminate her employment for a racially discriminatory reason. *Id*. Plaintiff complains that equivalent or worse criminal backgrounds did not limit employment of minorities. *Id*. at 5, 31. Nor did Brookdale give her an opportunity to

---

[1] Brookdale submits a form in which Plaintiff reports a misdemeanor conviction in 2015, although she does not specify whether it is for DWAI, indecent exposure, or both. ECF 42-2 at 11. The record also contains the actual criminal report (ECF 25), but both documents are outside the scope of the pleadings.

4

explain her criminal background check results before discharging her. Instead, Bill (and Michelle) abruptly told her to leave and not come back. *Id.* at 31.

## LEGAL STANDARDS

### I.     Rule 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must exclude "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the well-pleaded averments state a plausible claim for relief, then it survives a motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn*

5

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). "The plausibility standard does not require a showing of probability that 'a defendant has acted unlawfully,' but requires more than 'a sheer possibility.'" *Parshall v. Health Food Assocs., Inc.*, No. 14-4005-JAR, 2014 WL 2547761, at *1 (D. Kan. June 5, 2014). While the Rule 12(b)(6) standard does not require that a plaintiff establish a *prima facie* case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*.

## II.   Treatment of a *Pro Se* Plaintiff's Complaint

The Court considers the full breadth of Plaintiff's allegations drawn from her FAC. A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997). The Tenth Circuit interprets this rule to mean that if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should

do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That does not mean, however, that a court should "assume the role of advocate for the *pro se* litigant." *Id.* A court will not assume fact allegations that have not been pleaded or construct a legal theory on the plaintiff's behalf to round out the complaint. *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998).

## **DISCUSSION**

### I. Employer Status

Brookdale denies an employment relationship. If Brookdale was not her employer, then it could not have taken any adverse action against her. Viewed from the other perspective, Plaintiff must be a Brookdale employee to hold it liable under Title VII. *Xie v. Univ. of Utah*, 243 F. App'x 367, 372 (10th Cir. 2007) (clarifying that the plaintiff's "alleged employee status is an element of her Title VII claims"). To support its argument, Brookdale submits the Staffing Agreement which describes All Team as Plaintiff's exclusive employer and the entity having authority to discharge her. Even if the Court were to take it into consideration for Rule 12(b)(6) purposes, Brookdale's argument still would not support dismissal.

Both parties rely on the EEOC Guidance statement regarding federal employment discrimination statutes and temporary workers. Brookdale relies on Example Four that illustrates how a client firm (here, Brookdale) would not be considered an employer if it lacked authority to discharge the worker. *EEOC Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, 1997 WL 33159161, at *6 (Dec. 3, 1997). However, authority to discharge was not the only circumstance

that the hypothetical considered to reach that conclusion. There were additional facts that tied the worker more closely to the staffing firm than to the client firm which are not present here.

Nor is authority to discharge the sole factor. The EEOC Guidance statement lists numerous factors to consider and weigh when deciding whether the client firm has employer status. *Id*. at \*4. As applied here, "all of the circumstances in [Plaintiff's] relationship with [All Team Staffing and Brookdale] should be considered to determine if either or both should be deemed . . . her employer." *Id*. at \*5. Although Brookdale does not include it in its argument, the Tenth Circuit has a similar multi-factor test to determine "whether the alleged employer controlled 'the means and manner by which the work is accomplished'" and thus whether the plaintiff "is an employee protected by Title VII." *Xie*, 243 F. App'x at 373. Against the full range of factors, Plaintiff does plead a basis for regarding Brookdale as a joint employer for discrimination law purposes. As she describes it, Brookdale gave her work assignments and exercised sole supervisory authority over her. She answered to Brookdale managers, and she raised her complaints about the work environment with them. Indeed, Brookdale argues that Plaintiff also should have availed herself of its "Integrity Line" service as provided in the employment handbook. Brookdale promoted her and gave her a raise. Then, contrary to the Staffing Agreement's assignment of discharge authority to All Team Staffing, it was Brookdale who told Plaintiff that she was fired and asked her to leave.

The pleadings leave no doubt that All Team Staffing is Plaintiff's employer. However, as the EEOC Guidance statement explains, that does not preclude Brookdale also from being deemed an employer for discrimination law purposes. Because there is the possibility of joint employer status and because Plaintiff pleads facts which reasonably could support finding such a relationship, Brookdale does not demonstrate Rule 12(b)(6) dismissal on this basis.

**II.    Title VII**

An employer may not discriminate against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(2). The elements of Title VII discrimination are: (1) membership in a protected class, (2) an adverse employment action, (3) qualification for the position, and (3) less favorable treatment than others not in the protected class. *Khalik*, 671 F.3d at 1192. Alternatively, Title VII discrimination is defined as (1) membership in a protected class, (2) an adverse employment action, and (3) circumstances from which unlawful discrimination may be inferred. *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). Plaintiff need not establish *prima facie* elements to survive a Rule 12(b)(6) motion so long as she alleges sufficient facts that plausibly would allow a factfinder to find a Title VII violation. *Fuller v. Kansas Dep't of Children & Families*, No. 16-2415-DDC-JPO, 2018 WL 4361187, at *4 (D. Kan. Sept. 13, 2018).

Regardless of which definition governs, Brookdale contends that the claim fails because Plaintiff does not belong to a protected group. It argues that being a Southerner is not the kind of "national origin" that Title VII recognizes as a protected class. The statute means a place of origin *outside* the United States. *Jones v. Maritz Research Co.*, No. 14-2467-SAC, 2014 WL 6977935, at *5 (D. Kan. Dec. 9, 2014) (regarding as implausible the scenario that plaintiff "suffered adverse action in America by Americans because she was born in America"); *Wells v. Gourmet Servs., Inc.*, No. 13-CV-516-MEF, 2014 WL 3611819, at *5-6 (M.D. Ala. July 21, 2014) (dismissing a New Yorker's claim of discrimination in an Alabama workplace). Political affiliation also is not a protected class. Because Title VII does not protect an employee's political beliefs, *Grimsley v. Charles River Labs.*, No. 08-cv-00482-LRH, 2011 WL 4527415, at *5 (D. Nev. Sept. 28, 2011), Plaintiff does not state a claim of discrimination for being conservative.

9

To the extent her national origin and political affiliation arguments restate her claim of discrimination for being white/Caucasian, Title VII is at issue. Discrimination on the basis of race (or sex) is prohibited. However, the standard for showing a *prima facie* case of reverse race discrimination is different. To support the inference of discrimination despite membership in a historically favored group, Plaintiff must show either background circumstances that Brookdale is one of those unusual employers who discriminates against the majority or plead facts sufficient to support a reasonable inference that but for her status the adverse action would not have occurred. *Dickerson v. Bd. of Trustees*, No. 19-cv-02087-WJM-SKC, 2021 WL 492482, at *6 (D. Colo. Feb. 10, 2021); *Johnson v. Shinseki*, No. 11-cv-02881-CBS, 2013 WL 2295433, at *5 (D. Colo. May 24, 2013). Brookdale mentions reverse discrimination in a footnote, ECF 42 at 10, n. 9, but it does not demonstrate how Plaintiff fails to plead a plausible claim.

Brookdale challenges whether Plaintiff pleads that it took any adverse employment action against her. Plaintiff identifies a hostile work environment (during the time she worked at its facility) and its failure to hire her as a permanent employee. The Court discusses both of those claims separately below. However, there is a third adverse action that her pleadings suggest: her termination. As she frames it, Brookdale fired her after it obtained her criminal background report, but that report was not the real reason. The new director, Bill, acted with an unlawful discriminatory motive, and the report was used as cover. Plaintiff furthers that co-workers remained employed despite their criminal records.

Brookdale also argues Plaintiff's failure to plead that similarly situated co-workers were treated differently. The case law is unclear whether it is a required element of a *prima facie* case. *Parshall*, 2014 WL 2547761 at *3. Nevertheless, at least with respect to Brookdale's reaction to her criminal record report, Plaintiff does say that Brookdale treated her more harshly than co-

workers. Construing her pleading liberally, Plaintiff meets this element. *Fuller*, 2018 WL 4361187, at *5. Moreover, she requests discovery to develop evidence of such.

The Court finds no basis to dismiss Plaintiff's Title VII discrimination claim, although she may not proceed on the basis of national origin or political belief.

### III.     Hostile Work Environment

A workplace permeated with discriminatory intimidation, ridicule, and insult such that it creates an abusive working environment constitutes a hostile work environment in violation of Title VII. *Federspill v. Denver Public Sch.*, No. 17-cv-01480-WJM-STV, 2020 WL 3620323, at *9 (D. Colo. Jan. 22, 2020). However, Title VII is not a general civility code, and ordinary workplace tribulations or "run-of-the-mill boorish, juvenile, or annoying behavior" does not suffice. A plaintiff must show more than a few isolated incidents of enmity or a mere offensive utterance. *McElroy v. Am. Family Ins. Co.*, 51 F. Supp. 3d 1093, 1111-12 (D. Utah 2014); *Federspill*, 2020 WL 3620323 at 9.

To state the claim, a plaintiff must show membership in a protected group and conduct motivated by unlawful discrimination. Next, she must plead being subjected to harassment that was not only personally unwelcome, but was sufficiently severe to alter the terms, conditions, or privilege of employment. *Parshall*, 2014 WL 2547761 at *4; *Johnson*, 2013 WL 2295433 at *6; *Federspill*, 2020 WL 3620323 at *9. The conduct's severity and pervasiveness are measured from both subjective and objective viewpoints. Subjectively, the plaintiff in fact must have perceived the work environment as hostile or abusive. *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013). Objectively, the Court asks whether a reasonable person in the plaintiff's position would have regarded the work environment as hostile or abusive under the full circumstances. Relevant factors include the frequency and severity of the discriminatory conduct;

11

whether it was physically threatening or humiliating; and whether it unreasonably interfered with work performance. *McElroy*, 51 F. Supp. 3d at 1111-12; *Federspill*, 2020 WL 3620323 at 9. For the final element, the defendant must have known or should have known of the hostile work environment but did not respond adequately to it. *Debord*, 737 F.3d at 650.

The Court accepts as true Plaintiff's description of a difficult work environment where she felt singled out and harassed. However, even after construing her allegations broadly, the difficulties she experienced do not rise to the level of a "hostile work environment" needed to state a Title VII violation. Conduct that was motivated by animus towards her political beliefs or her regional origin is not actionable. Her complaints of sex and age-based discrimination are vague. In several different instances, conduct she found offensive or harassing was corrected either by a supervisor's intervention or because the co-worker was fired (whether for a related reason or not). What is left are the typical workplace tribulations of feeling micromanaged or underappreciated. Even if her co-workers and managers were motivated by the wrong reasons, the remaining aspects of her grievance are insufficiently severe or persuasive. Moreover, she was at Brookdale for a relatively short period of time (from August 28 to December 31, 2019) (ECF 39 at 32), and her employment ended for reasons unrelated to her dissatisfaction with the workplace.

Because Plaintiff does not describe a work environment of sufficient hostility to meet the legal standard, the Court dismisses this claim.

**IV.    Failure to Hire**

To state a Title VII violation for Brookdale's failure to hire her, she must demonstrate: (1) membership in a protected class, (2) she applied for and was qualified to do the vacant position, (3) Brookdale rejected her despite her qualification, and (4) Brookdale hired someone else who possessed her qualifications but was not a member of her protected class. *Roberts v. State of Okla.*,

12

No. 95-6235, 1997 WL 163524, at *4 (10th Cir. 1997) (citing *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991)). These *prima facie* elements do not directly apply to this situation. Plaintiff already was working at its facility, and Brookdale wanted to convert her to a permanent employee. She was not competing against other applicants for employment but rather sought a change in status. Instead of a failure to hire, Plaintiff's grievance more closely aligns with the unlawful termination claim. For that reason, the Court dismisses it as a separate claim, but without prejudice to her ability to litigate it as part of her termination claim.

Brookdale seeks dismissal of the failure-to-hire claim for another reason: Plaintiff did not pass the requirements for employment. First, it points to the criminal background check, which it contends Colorado law required it to conduct. Plaintiff counters that nothing of her background was of practical concern, and criminal histories did not prevent others from working at Brookdale. Next, Brookdale says that Plaintiff subsequently failed to respond to its request for additional information. However, that argument exceeds the scope of the pleadings and whether Plaintiff makes an initial plausible claim. Because the Court finds another basis for dismissal, Brookdale's argument also is moot.

**V.   ADA**

The FAC contains a new claim of disability discrimination in violation of the ADA. Plaintiff asserts post-traumatic stress disorder which she says "her employment at Brookdale exacerbated." ECF 39 at 29. However, she does not relate the medical condition to any adverse action by Brookdale or failure to accommodate. Regardless of whether Plaintiff pleads a *prima facie* case of disability discrimination, she did not exhaust it.

Exhaustion of administrative remedies is a prerequisite to a Title VII lawsuit. It serves two purposes. It gives notice to the employer of the employee's grievance. *Smith v. Cheyenne*

13

*Retirement Investors, LP*, 904 F.3d 1159, 1164 (10th Cir. 2018). It also gives EEOC the opportunity to resolve the dispute between the employee and employer. To fulfill those goals, the employee must make a good faith effort to cooperate and provide all relevant, available information to EEOC. *Cirocco v. McMahon*, 768 F. App'x 854, 859 (10th Cir. 2019).

That obligation includes identifying all grievances. An employee must pursue administrative remedies for "each discrete instance of discrimination or retaliation." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012); *McElroy*, 51 F. Supp. 3d at 1103-04. The charge must put the EEOC on notice of what is at issue. *Apsley*, 691 F.3d at 1210. What the employee later may litigate in court "is generally limited to the scope of the administrative investigation that can reasonably be expected to follow the [submitted] charge." *Smith*, 904 F.3d at 1164. The charge also must contain facts concerning the discriminatory or retaliatory actions underlying each claim. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). Although a court construes a charge liberally, only those grievances that were subject of EEOC action are considered exhausted. *Id.* Moreover, the exhaustion inquiry is limited to the allegation in the charge form, itself. *Smith*, 904 F.3d at 1165; *Jones*, 502 F.3d at 1187 (explaining that those claim categories that the employee expressly check-marked and the accompanying descriptive text define what was exhausted); *Jones*, 2014 WL 6977935 at *4-5.

Plaintiff neither checked "Disability" nor otherwise indicated a claim of disability discrimination on the Charge of Discrimination form that she filed with EEOC. ECF 39 at 32. She does not challenge that point in her Response, and it is her burden to establish exhaustion, *Kulikowski v. Payscale*, No. 18-cv-00702-MSK-MEH, 2018 WL 3209109, at *3 (D. Colo. June 29, 2018) (citing *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002)). Plaintiff's ADA claim is dismissed with prejudice.

## VI.    ADEA

A *prima facie* case of age discrimination requires a showing that the plaintiff: (1) is within the protected class of individuals forty years or older, (2) performed satisfactory work, (3) terminated from employment, and (4) replaced by a younger person, although not necessarily someone younger than forty years of age. *McElroy*, 51 F. Supp. 3d at 1110. Brookdale moves for dismissal of this claim for Plaintiff's failure to plead membership in a protected class. It does not appear that Plaintiff states in her FAC whether she is forty years or older. This Court adds that neither does Plaintiff plead that she was replaced by a younger person. Moreover, her descriptions of adverse employment actions done on the basis of her age are vague. The Court dismisses the ADEA claim but without prejudice to amend.

## VII.   Lawful Off-Duty Activity

Colorado prohibits an employer from terminating an employee for "engaging in any lawful activity off the premises of the employer during nonworking hours unless [a specified exception applies]." Colo. Rev. Stat. § 24-34-402.5. Plaintiff points to no personal activity outside of work that caused her to lose her job. Instead, the substance of her allegations in support of this claim is how she was harassed at work for who she was as a person. In other words, at least as she frames it, this claim is redundant to her Title VII claims. Because she does not plead a plausible Colo. Rev. Stat. § 24-34-402.5 violation, the Court dismisses it. Moreover, because nothing in the FAC indicates how the statute could be implicated, this claim is dismissed with prejudice.

## VIII.  FCRA

Plaintiff alleges that Brookdale wrongly used her consumer report for an employment purpose in violation of 15 U.S.C. § 1681b. Plaintiff does not dispute the propriety of obtaining the report in the first place. She concedes that "Brookdale did obtain consent from [her] to obtain the

15

credit report." ECF 39 at 31. Instead, Plaintiff complains that Brookdale "then used it for discriminatory purposes" for not hiring her "on criteria that would not have stopped [a minority or male] from being hired." *Id*. Thirdly, she denies that Brookdale gave her a copy of the report or the opportunity to explain the information in it. *Id*.

For FCRA purposes, the term "consumer report" generally means a communication regarding a person's credit worthiness. 15 U.S.C. § 1681(d)(1). Although outside the scope of the FAC, Brookdale relies on two forms signed by Plaintiff on December 18, 2019 authorizing a background investigation. The forms advised Plaintiff that the requested report "may contain information regarding your criminal history," "motor vehicle records ('driving records')," or "other background checks." ECF 42-2 at 8-9. In that way, the consumer report that Brookdale ran appears broader than what 15 U.S.C. § 1681(d)(1) contemplates, and instead provided an all-purpose background check. Moreover, Plaintiff's grievance does not concern her *credit*, but rather her criminal history. Even in her Response, she discusses her FCRA claim in reference to her criminal record. ECF 44 at 10. With no credit report at issue, it is unclear how FCRA is implicated. However, Brookdale does not argue the statute's inapplicability.

To the extent Plaintiff alleges a violation of 15 U.S.C. § 1681b(b)(3), Brookdale seeks dismissal on the merits. It relies on documentation to show that notice was actually sent to her before it took adverse action. ECF 25 at 9. Not only is that document beyond the scope of the FAC, but Plaintiff denies receiving a copy, contrary to what Brookdale contends. Moreover, Plaintiff complains about not having the opportunity to discuss the matter with Brookdale before it fired her.

Plaintiff argues that Brookdale used the report in a discriminatory manner to fire her but not others. Brookdale contends that this particular argument is better litigated as part of her Title

16

VII claim. The FCRA claim may be duplicative, but Brookdale cites no legal authority that limits her to the Title VII claim. Brookdale cites *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1245-46 (10th Cir. 1999), but that case addressed how a claim of gender discrimination in violation of the Equal Credit Opportunity Act merges into a Title VII claim. Brookdale cites no case that analyzes FCRA in the same way or whether FCRA even provides a cause of action for litigating discrimination.

On Brookdale's present limited argument, the Court finds no basis to dismiss the FCRA claim.

## IX.   Leave to Amend

Dismissal of a case is a harsh remedy, and a *pro se* litigant's pleadings are to be construed liberally. As a general rule, therefore, a court may give such a litigant the opportunity to amend the complaint to cure a pleading defect. *Hall*, 935 F.2d at 1109–10; *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). A court may dismiss a complaint without an opportunity to amend if "it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing [her] an opportunity to amend [her] complaint would be futile." *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). That is not the case here. Some claims remain for which the opportunity to replead them may not be futile. *Curley*, 246 F.3d at 1281–82; *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014).

## X.   Arbitration

Brookdale submits the Application for Employment that Plaintiff signed on December 5, 2019. As part of that application, Plaintiff agreed "in the event a dispute should arise with regard to whether or not I am hired, or if hired, a dispute should arise between my employer and me, that I agree to arbitrate the dispute by a final and binding arbitration." ECF 42-2 at 7. That provision

also refers to the arbitration provision in the employee handbook, which in turn incorporates Brookdale's Dispute Resolution Agreement ("DRA"). ECF 42-4 at 1. The DRA requires arbitration of "*any* past, present, or future dispute arising out of or related to my application for employment, employment, and/or termination of employment that [the employee] may have against Brookdale" for which "discrimination, harassment, retaliation, hiring, demotion, or promotion" are covered disputes. *Id.* (emphasis in the original). It is unclear which of the above provisions apply.

There also is the question about the scope or arbitration. Brookdale seeks to compel arbitration in the alternative for any claims that survive dismissal. Brookdale furthers that all potentially remaining claims fall within the scope of a binding arbitration provision, but it makes only a conclusory assertion of such.

The plain language of the application suggests that Plaintiff's failure-to-hire claim could be subject to arbitration, but the Court finds that it should be dismissed. Because the FCRA claim concerns the hiring process, it may be subject to arbitration, as well. However, the remainder of the claims concern actions that occurred before she applied for a direct-hire, permanent position. While Plaintiff may plead a plausible basis for finding Brookdale a "joint employer" for purposes of the federal employment discrimination statutes, Brookdale does not establish an employment relationship for purposes of invoking the DRA.

The more practical approach is to deny Brookdale's request to compel arbitration as it currently is raised. Brookdale should wait until Plaintiff files her Second Amended Complaint and tailor its arbitration request to the claims she re-asserts in it. Then, it should pursue arbitration in a separately filed motion to compel and present argument specific to what arbitration provision governs and how the subject claims are covered.

18

## CONCLUSION

Plaintiff describes a work environment in which different co-workers harassed her or hindered her ability to work. However, the harassment had no uniform motivation; co-workers and supervisors treated her unfairly for different reasons whether in reaction to her race, gender, age, religion, or political beliefs. As difficult as the work environment may have been, it does not meet the objective definition of a hostile work environment in order to state a Title VII claim. In comparison, her termination claim is plausibly pleaded. Whether Brookdale had a lawful, non-discriminatory reason for firing her is beyond the scope of this ruling.

Accordingly, the Motion to Dismiss [filed May 7, 2021; ECF 42] is **denied in part and granted in part**. The Motion is denied with respect to the FCRA claim and the Title VII termination claim (except on the basis of national origin or political belief). The Motion is granted to the extent that the hostile work environment, ADA, and Off-Duty Work claims are dismissed with prejudice and the ADEA and failure-to-hire claims are dismissed without prejudice. Lastly, Brookdale's request to compel arbitration is denied, but without prejudice to re-asserting it in a separately filed motion to compel after Plaintiff files her Second Amended Complaint.

Dated at Denver, Colorado, this 29th day of June, 2021.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge