IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03788-MEH

ALISON D. JONES,

    Plaintiff,

v.

BROOKDALE EMPLOYMENT SERVICES, LLC and
ALL TEAM STAFFING,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is the Renewed Motion to Compel Arbitration, to Stay Proceedings, and to Administratively Close Case Pending Arbitration filed by Defendant Brookdale Employment[1] Services, LLC ("Brookdale"). ECF 66. It is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. Based on the record and for the reasons that follow, the Court respectfully recommends that the Renewed Motion be granted.

### **BACKGROUND**

**I.    Alleged Facts**

    At issue is Plaintiff's Second Amended Employment Discrimination Complaint ("SAC"), and the Court draws the following fact background from it. A previous Order (ECF 52) provides a comprehensive statement of how Plaintiff previously framed the dispute, and the Court

---

[1] Defendant clarifies that its correct name is "Brookdale *Employee* Services, LLC." ECF 66 at 1 (emphasis added).

incorporates it by reference here to the extent it provides additional context. The Court reviews the underlying allegations in light of Plaintiff's complicated employment status and how it relates to the question of whether she is subject to an arbitration agreement.

In the present SAC (ECF 64), she alleges that she "was employed at Brookdale Senior Living Center" (*id*. at 10), a retirement home for which Defendant Brookdale is responsible for employment matters. She furthers that she "was initially hired through a temporary employment agency," the Co-Defendant, All Team Staffing. *Id*. At least for employment law purposes, she contends that both Brookdale and All Team Staffing count as joint employers. *Id*. at 20.

Her first position at the retirement home was as a dishwasher earning minimum wage. *Id*. at 10. Her assignment to the retirement home began on August 28, 2019. The dining room manager (Michelle) and the food and beverage director (James) "invited [her] to stay." *Id*. Michelle promoted her to server, increased her wage, and permitted overtime. Both management and customers were pleased with her job performance. *Id*.

At first, she enjoyed working there, but then the environment turned antagonistic. To summarize her various allegations, she was treated negatively because she was white, female, older, conservative, and Christian. Plaintiff liked Michelle personally but felt she managed operations poorly and was reluctant to reprimand staff. *Id*. at 30. James quit for reasons similar to Plaintiff's present grievance. *Id*. at 27. The new food and beverage director (Bill) was African-American, and he was generally hostile towards white employees. *Id*. at 7, 31.

Despite the difficult work environment, Plaintiff applied to Brookdale for a permanent "direct hire" position as a server. Plaintiff anticipated being hired despite a criminal record. *Id*. at 31, 34. She reports a DWAI (a drunk driving offense), a reckless endangerment charge that was automatically added to the DWAI charge, and an indecent exposure charge (which she explains a

2

vindictive landlord wrongfully brought against her). *Id*. at 31-33. She concedes that she was *charged* with those offenses. The SAC leaves unclear what *convictions* she has, although she says she "was forced to let the [indecent exposure] charge stand." *Id*. at 33. Two regional managers assured her that the criminal background check would not hinder her becoming a permanent employee. *Id*. at 31. It was not an issue until Bill, the newly hired food and beverage director, used it as an excuse to terminate her employment (or stated differently, declined to hire her as its own permanent employee) when the real motivation was reverse discrimination. *Id*. at 7, 31, 34.

Plaintiff complains that equivalent or worse criminal backgrounds did not limit Brookdale's employment of minorities. *Id*. at 34. Nor did Brookdale give her an opportunity to explain the criminal background check results before discharging her. *Id*. Instead, Bill and Michelle abruptly told her to leave and not come back. *Id*.

## II.     Claims for Relief

Plaintiff sues under a wide range of employment-related laws. Brookdale construes the SAC as raising claims for discrimination (on the basis of race, religion, and sex) in violation of 42 U.S.C. § 2000e-2 ("Title VII"); retaliation under Title VII; age discrimination in violation of 29 U.S.C. § 621 ("ADEA"); and a violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681b ("FCRA") in how it handled her background check.

Although she names the temporary staffing agency, All Team Staffing, as a Co-Defendant, the focus of Plaintiff's averments and claims are on Brookdale. Nor has All Team Staffing appeared in this lawsuit. On July 14, 2021, the Court directed the Clerk of Court to enter a notice of default against it. ECF 59, 60.

## **LEGAL STANDARD**

"[U]pon being satisfied that the issue involved in [the pending] suit or proceeding is referable to arbitration under [the parties'] agreement," a district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017) (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). Therefore, a district court *must* stay or dismiss the lawsuit if a written agreement provides for the arbitration of its subject matter. "There is a strong federal policy favoring arbitration for dispute resolution." *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting *Peterson v. Shearson/Am. Express, Inc.,* 849 F.2d 464, 465 (10th Cir. 1988)). If there is uncertainty as to whether a claim is arbitrable, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Id.* (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. Am. Oil Co.,* 528 F.2d 252, 254 (10th Cir. 1976)). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002).

Arbitration is a contractual matter; it is required only if the parties agree to it. *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986); *see also Coors Brewing Co.,* 51 F.3d at 1516. "The question of whether the parties agreed to arbitrate is to be decided by the court." *AT & T Techs.*, 475 U.S. at 648–49. Only claims having "a reasonable factual connection to the contract" are arbitrable. *Coors Brewing Co.,* 51 F.3d at 1516.

Arbitration is not required if the contract is unenforceable or should be revoked.

> "[A] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

4

> controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*"

9 U.S.C. § 2 (emphasis added). The Court applies state law to determine whether an arbitration agreement is enforceable. *Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1077 (D. Colo. 2013). The interpretation of a contract is a question of law for the court, and a court's duty is "to interpret a contract in a manner that effectuates the manifest intention of the parties at the time the contract was signed." *Randall & Blake v. Metro Wastewater Reclamation Dist.,* 77 P.3d 804, 806 (Colo. App. 2003).

An arbitration provision may not be enforced if it is unconscionable. The factors to determine whether a contract is procedurally and substantively unconscionable are: (1) a standardized agreement executed by parties of unequal bargaining power, (2) lack of opportunity to read or become familiar with the document before signing it, (3) use of fine print in the portion of the contract containing the challenged provision, (4) absence of evidence that the provision was commercially reasonable or should have reasonably been anticipated, (5) the terms of the contract are substantively unfair, (6) the relationship of the parties, including factors of assent, unfair surprise, and notice, and (7) all of the circumstances surrounding the formation of the contract, including its commercial setting, purpose, and effect. *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986). Ultimately, it is Plaintiff's burden, as the party challenging arbitration, to persuade the Court of a contract's unconscionability. *Cook v. PenSa, Inc.,* No. 13-cv-03282-RM-KMT, 2014 WL 3809409, at *11 (D. Colo. Aug. 1, 2014).

The Court resolves ambiguities in an arbitration agreement or doubts about an arbitration clause's scope in favor of arbitration. *Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006); *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 797 (10th Cir. 1995) (quoting *Mitsubishi Motors Corp. v.*

*Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1984)). When the arbitration clause is broad in scope, and "in the absence of any express provision excluding a particular grievance from arbitration," the agreement must be enforced, unless the opposing party can positively demonstrate that there is no interpretation of the agreement that would cover the claims at issue. *Local 5-857 Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union v. Conoco, Inc.,* 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT&T Techs.,* 475 U.S. at 650)).

## DISCUSSION

Brookdale submits the Application for Employment that Plaintiff signed on December 5, 2019. As part of that application, Plaintiff agreed "in the event a dispute should arise with regard to whether or not I am hired, or if hired, a dispute should arise between my employer and me, that I agree to arbitrate the dispute by a final and binding arbitration." ECF 66-1 at 7. That provision references the arbitration policy in the employee handbook. *Id*. The employee handbook in turn incorporates Brookdale's Dispute Resolution Agreement ("DRA"). ECF 66-2 at 3. The DRA requires arbitration of "*any* past, present, or future dispute arising out of or related to my application for employment, employment, and/or termination of employment that [the employee] may have against Brookdale" for which "discrimination, harassment, retaliation, hiring, demotion, or promotion" are covered disputes. ECF 66-3 at 1(emphasis in the original).

Although Brookdale invokes the above arbitration provisions, it denies being Plaintiff's employer. In the previous Order, the Court found plausible Plaintiff's argument that both Brookdale and All Team Staffing could be deemed joint employers at least for discrimination law purposes. ECF 52 at 8. Whether Plaintiff can be deemed an employee who is subject to the DRA, Brookdale does not address. Nor does Brookdale address the other issues related the complicated

employment relationship that the Court raised. Nevertheless, despite those shortcomings in Brookdale's Renewed Motion, the request should be granted in full.

Even if Plaintiff is party only to the arbitration clause of the employment application, the Court ultimately finds that provision to be broad enough to permit arbitration. In the job application, Plaintiff agreed to arbitration "in the event a dispute should arise with regard to whether or not I am hired." ECF 66-1 at 7. Plaintiff challenges Brookdale's decision not to hire her as a permanent employee, and plainly, that dispute falls within the provision's scope. It is true that Plaintiff already was working at Brookdale's retirement home when she submitted the application. Not only did Brookdale deny her a permanent job, but in practical effect at least, it simultaneously fired her, asking her to leave and not return. Because all the adverse actions that Brookdale took against Plaintiff coincide with her job application and its rejection, either directly or indirectly, the Court finds all of Plaintiff's claims arbitratable under the job application contract, even the termination decision. The SAC shifts focus from an alleged hostile work environment generally to the adverse actions by manager Bill and his alleged use of the background check that the job application triggered as cover for an unlawful termination. ECF 64 at 7.

Plaintiff highlights the inconsistency of Brookdale's position, invoking the various employment-based arbitration provisions while simultaneously denying an employment relationship. However, arbitration is a contractual matter, and even after limiting review to just the job application, she signed a document expressing her agreement to that form of dispute resolution. Federal law supports arbitration and requires that disputes reasonably related to those covered by an arbitration agreement be arbitrated. Plaintiff makes the conclusory assertion that she was coerced into signing it, but she does not demonstrate how the requirement of a written application for a job (which Plaintiff actively was pursuing of her own accord) is unduly "coercive." Nor does

7

the Court see any indication that enforcement of the arbitration contract otherwise would be unconscionable.

Plaintiff opposes arbitration, preferring to litigate her claims under federal court procedures, including the right to a jury trial. However, federal law endorses arbitration as a valid alternative. Plaintiff also prefers to remain in federal court where she feels she has greater resources by which to meet litigation obligations. However, as she herself concedes, "arbitration does have some advantages, namely, speed and reduced cost." ECF 68 at 2. Defendant explains that the American Arbitration Association, who will be hearing the dispute, offers similar forms of assistance. In her SAC, Plaintiff also reports finding new work and thus income to help cover expenses. ECF 64 at 26. While not dispositive of the legal question of whether her claims are arbitratable, the above information at least assuages some of her concerns.

Should arbitration be compelled, Plaintiff asks for the imposition of certain terms. ECF 68 at 3. Because it is a contractual matter, the Court only may enforce the arbitration provision, itself, and not how the arbitration will be conducted.

In order to pursue arbitration, Brookdale asks the Court to stay the federal court proceeding in its entirety and administratively close this civil action. The Court finds that relief appropriate even though it is not the only Defendant. To begin with, Co-Defendant All Team Staffing has not made an appearance in this case. It has been in default since July 2021, and Plaintiff has taken no other action with respect to it. More importantly, the SAC contains no claims for legal redress against it. The SAC's only mention of All Team Staffing is for the background fact that it assigned Plaintiff to work at Brookdale's retirement home. Consequently, there is no need for this civil action to remain open with respect to All Team Staffing.

## CONCLUSION

All disputes that "should arise with regard to whether or not [Plaintiff is] hired" are subject to arbitration. Plaintiff's relationship with Brookdale goes beyond that of simply a job applicant and potential employer. She already was working on site, and in a sense, Brookdale was acting as an "employer," including when it asked her to leave the work site. The decision not to hire her was the same as the decision to terminate her. Because of the interrelationship, the scope of the arbitration clause is broad enough to cover all the employment law violations that Plaintiff raises.

Accordingly, the Court respectfully RECOMMENDS[2] that Defendant Brookdale's Renewed Motion to Compel Arbitration, to Stay Proceedings, and to Administratively Close Case Pending Arbitration [filed October 15, 2021; ECF 66] be **granted**. The Court recommends that all claims Plaintiff raises in her Second Amended Complaint be arbitrated and that this civil action be administratively closed.

The Court directs the Clerk of the Court to **reassign** this case to a District Judge pursuant to D.C. Colo. LCivR 40.1(a).

---

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

Dated at Denver, Colorado, this 29th day of November, 2021.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge